1
2
3
4
5

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

6

7   JAMES Q. WILKINSON,

8                             Plaintiff,          **Case No.** C05-5656 JKA
          v.
9   ELDON VAIL, et al.,                          **ORDER DENYING DEFENDANTS'**
                                                 **MOTIONS TO DISMISS**
10                           Defendant.

11

12

13          THIS MATTER comes before the court on Motion to Dismiss filed by the Attorney General for the

14   State of Washington on behalf of all defendants other than defendants Ellis (independently represented) and

15   O'Neel (unserved) (Doc. #24),  and Motion to Dismiss filed by Jackson & Wallace LLP on behalf of defendant

16   Ellis (Doc. #25).   The motions were filed pursuant to Fed. R. Civ. Proc. 12(b).  The court has considered all

17   materials submitted in support of and in response to said motions, the files and records herein, and oral

18   argument presented to the court June 20,2006.  The court has received and reviewed post oral argument

19   materials submitted by the moving parties as well.  They are <u>Woodford v. Ngo</u>, decided June 22, 2006 by the

20   United States Supreme Court, and <u>Vaden v. Summerhill</u> decided June 6, 2006 by the Ninth Circuit Court of

21   Appeals.

22

23          This action is one for relief pursuant to 42 U.S.C. 1983.  Petitioner seeks damages for alleged violation

24   of his civil rights.  Petitioner claims (1) injuries sustained October 13, 2002, while an inmate at the Clallam Bay

25   Corrections Center (CBCC) operated by the Washington State Department of Corrections (DOC), and (2)

26   failure to properly diagnose and treat said injuries..  Plaintiff was transferred to another institution in December

27   2002, and released from DOC October 8, 2003.  On April 29, 2005, plaintiff was convicted of a new crime and

28   was returned to DOC and placed at Stafford Creek Corrections Center (SCCC).   This action

was filed October 10, 2005.  The relevant statute of limitations for filing a 1983 action in the State of Washington is three years.

### DISCUSSION

Both motions to dismiss are predicated on petitioner's alleged failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA) at 42 U.S.C. 1997e(a) which provides as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or other federal law, by a prisoner confined in any jail, prison or other correction facility, until such administrative remedies as are available are exhausted.

A motion to dismiss for failure to exhaust administrative remedies is properly brought as an unenumerated Fed.R.Civ.Proc. motion, and the material allegations of the complaint are taken as admitted. The complaint is to be liberally construed in favor of the plaintiff. Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003); Sherman v. Yakahi, 549 F.2d 1287 (9th Cir. 1977). When dismissal is based on failure to exhaust administrative remedies, the dismissal should be without prejudice.

Defendants have the burden of raising and proving a prisoner's failure to exhaust under the PLRA. Brown v. Vatloff, 422 F.3d 926, (9th Cir. 2005).

Grievances by Washington State inmates are governed by the Washington Offender Grievance Program (OGP).  The program has a wide range of remedies and four levels of review.

*Level 0  - Informal Grievance*.  The grievance coordinator at the prison receives the written complaint from the offender; may seek further information or request rewriting, and may accept the complaint for processing as a formal grievance.

*Level I - Formal Grievance*.  Grievances against policy, procedure, other offenders and emergencies.  The local grievance coordinator is the respondent at this level.

*Level II - Formal Grievance re: staff conduct, and appeals from lower levels.*  The prison superintendent is the respondent at this level.

*Level III - Appeal to department headquarters*.  The Administrators are  respondents at this level.

There are two unusual timing considerations related to this case.  They are (1) an extremely short period of time (5 days) a prisoner had to file his initial initial grievance under the OGP policy at the time of the alleged incident, and (2) the apparent unusual delay (34 months) in filing the initial grievance.  The court inquired of moving counsel at oral argument if "timing" was an issue insofar as the motions to dismiss were concerned.  Counsel was emphatic in response.  It was clearly stated that the motions to dismiss were based solely on plaintiffs failure to exhaust.   Inasmuch as the "not grievable" response to the initial grievance appears to be based on a "timeliness" issue rather than the merits, the issue of delay is not dealt with in this court decision.

It is undisputed that plaintiff's first administrative action was in the nature of a complaint on which petitioner checked the box "Initial Grievance" filed  August 22, 2005 while residing as an inmate at Stafford Creek Corrections Center (SCCC).   It is further undisputed that petitioner's complaint was rejected as "not grievable" by the grievance coordinator (see Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss, Doc. #30, page 2, line 12; and Attachment B to Declaration of Devon Schrum, Doc #24-2,  p.23).   Petitioner was advised by way of the Grievance Coordinators Response on August 30, 2005, that "Your complaint is being returned because: 'it is not a grievable  issue.' " This information is relayed by checking a box.  The explanation given is: "well past timeliness."  Another box which could be checked, but was not, alludes to the possibility of appeal.  In 2002, the year of the alleged violation of petitioner's civil rights, inmates had five working days from the date of the incident to file a grievance.  That time has since been extended to 20 days.  Petitioner's August 22, 2005 OGP complaint was made approximately 34 months following the alleged event.  Defendants now characterize this rejection  more in the nature of a denial subject to appeal because it was based on untimeliness.

Because petitioner was told his complaint was not grievable,  he characterizes the rejection as the end of the line in so far as his duty to exhaust is concerned.  In support of that contention, petitioner cites a flow chart from the Department of Corrections Grievance Policy and Procedures Manual, which designates three stages in the process as "END" points (Plaintiff's Opposition to Defendants' Motions to

Dismiss Doc#29, Declaration of Jay Brown,  Exhibit B).  The earliest such designation is when the

Grievance Coordinator responds to the initial offender complaint as "Not Grievable."  Defendants,

nonetheless, assert that the plaintiff could have appealed that determination to Level II or Level III (see

Doc. #24,  Exhibit  2, par 11 – Declaration of Devon Schrum).

       The motion before the court, based on petitioner's failure to exhaust administrative remedies,  was

filed  May 4, 2006.  Although petitioner is represented by counsel in this matter, it appears that on May 13,

2006, petitioner filed, on his own,  an "Offender Complaint" which reads almost identically to the Offender

Complaint dated August 22, 2005.  This time petitioner checked the box "Appeal to Next Level."  On May

30, 2006, the Grievance Coordinator responded by again checking the box reading "it is not a grievable

issue," adding the words "remains as deemed."  In the explanation section the coordinator wrote and/or

stamped:  "Remains past timelines.  You may appeal to Grievance Program Manager, P.O. Box 41129,

Olympia, 948504."  It is interesting to note that no such explanation regarding appeal was noted in the

response to plaintiff's initial grievance by way of his August 2005 Offenders Complaint.  Defendants take

the position that petitioner cannot pursue the civil rights action in this court  because there is an

administrative process pending, although there is no evidence that petitioner appealed the May 30, 2006

rejection of his May 13, 2006 Offender Complaint.  It appears to this court that there is no meaningful

pending administrative action relating to petitioner's 1983 cause of action, and that an appeal would be

futile given that (1) the May 16 "appeal" was a response to the pending motion before this court; and (2)

pursuing any relief under the OGP would be futile at this time.

       Following oral argument, the United States Supreme Court issued a June 22, 2006 opinion in the

matter of <u>Woodford v. Ngo</u>, (appealed from <u>Ngo v.Woodford,</u> 403 F.3d 620 (9th Cir. 2005) holding that

the PLRA's exhaustion requirement requires proper exhaustion of administrative remedies.  The court

found no distinction between a denial on the merits and a denial based on procedural error, i.e. timeliness.

At first blush this opinion may appear to support defendants' motions to dismiss in this case.  A thorough

reading of the case, however, suggests otherwise. The court found that "The plain text of the PLRA simply

requires that 'such administrative remedies as are available' be exhausted before the prisoner can take the serious step of filing a federal lawsuit against the officials who hold him in custody."  This court finds petitioner's case distinguishable from Ngo.

The Ngo court dismissed petitioner's contention that requiring proper exhaustion will lead prison administrators to devise procedural requirements that are designed to trap unwary prisoners and thus defeat their claims.  While this court does not believe that the OGP Grievance Policy and Procedure Manual was designed to trap unwary prisoners, its flow chart visually advises the offender that he/she has reached the "END" when the Offender Complaint is returned "not grievable."  To deny the defendant access to federal court for honoring the "END" designation on the basis that he failed to heed it, would in fact constitute a "trap for the unwary prisoner."  Effectively, no remaining administrative remedies appeared available.

Defendant Ellis offers the June 6, 2006 Ninth Circuit decision in Vaden v. Summerhill as support for the proposition that the prisoner may bring his federal court action only after the administrative process is at an end.  As indicated above, this court finds that is exactly what happened in this instance.  The subsequent filing by petitioner of an "Offender Complaint" in May of 2006, does not create a "pending administrative proceeding" at the time the federal suit was filed, and given the unusual context of the subsequent Offender Complaint, the court finds it irrelevant to the issue of exhaustion.

## ORDER

**Defendants' Motions to Dismiss are denied.**

July 7,  2006

 _/s/ J. Kelley Arnold_____
J. Kelley Arnold
United States Magistrate Judge